EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>José Miguel Álvarez De Jesús<br><br>Recurrido | Certiorari<br><br>2024 TSPR 87<br><br>214 DPR ___ |

Número del Caso: CC-2023-0514

Fecha: 12 de agosto de 2024

Tribunal de Apelaciones:

Panel II

Oficina del Procurador General:

Hon. Fernando Figueroa Santiago
Procurador General

Lcda. Mabel Sotomayor Hernández
Subprocuradora General

Lcda. Laura W. Robles Vega
Procuradora General Auxiliar

Representantes legales de la parte recurrida:

Lcdo. Juan G. Martín Meléndez
Lcdo. José V. Figueroa Zayas

Materia: Derecho Constitucional y Procedimiento Criminal – Obtención de una muestra de sangre como parte de la investigación de un accidente vehicular no está sujeta a que el Estado informe a la persona registrada sobre su derecho a no consentir, ni la utilización de la prueba toxicológica durante un proceso penal a que le hayan advertido sobre las consecuencias que podía acarrear la toma de la muestra.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

      v.

José Miguel Álvarez De Jesús      CC-2023-0514

    Recurrido

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES

En San Juan, Puerto Rico, a 12 de agosto de 2024.

Hoy clarificamos que para obtener muestras de sangre como parte de la investigación de un accidente vehicular, las autoridades gubernamentales no tienen que informar al registrado sobre su derecho a no consentir. Además, para poder utilizar el examen toxicológico en un proceso criminal en contra del registrado, no hay que advertirle sobre las consecuencias penales que pudiera acarrear la toma de esa muestra.

I

El 16 de junio de 2021 ocurrió un accidente de tránsito de carácter fatal en la Carretera Núm. 172

del pueblo de Cidra. Según se desprendió de la investigación realizada por la Policía de Puerto Rico, el Sr. José Miguel Álvarez De Jesús, quien conducía un camión Mack, invadió el carril en dirección contraria e impactó frontalmente a la guagua Ford Econoline conducida por el Sr. Carlos Ortiz Varela, quien falleció a consecuencia del incidente.

Producto de este suceso, el Ministerio Público presentó cuatro denuncias criminales contra el señor Álvarez De Jesús por entender que, bajo los efectos del alcohol, ocasionó un accidente de tránsito que resultó en la muerte del señor Ortiz Varela. En específico, se le imputó negligencia al conducir, manejar un vehículo de motor bajo los efectos de bebidas embriagantes, y causar grave daño corporal a un ser humano por conducir un vehículo bajo los efectos del alcohol, en violación de los artículos 5.07, 7.02 y 7.06 de la Ley Núm. 22 de 7 de enero de 2000, según enmendada, conocida como la Ley de Vehículos y Tránsito de Puerto Rico, 9 LPRA secs. 5127, 5202 y 5206, respectivamente.

Luego de varios trámites procesales, que incluyeron la presentación de los pliegos acusatorios por los delitos anteriores, el acusado presentó una *Moción de Supresión de Evidencia*. En ella solicitó: (1) que se excluyera el resultado de una prueba de alcohol que se le realizó en la fecha del accidente, la cual arrojó un .18% de alcohol por volumen en su sangre, y que (2) se suprimieran ciertas admisiones que emitió el día siguiente al accidente. En su escrito, adujo que ambas piezas evidenciarias fueron

obtenidas a través de un procedimiento que violó sus derechos constitucionales. En lo aquí pertinente, manifestó que la prueba de sangre fue producto de un registro ilegal, pues fue tomada sin que mediara una orden judicial previa.

En respuesta, el Ministerio Público presentó una *Moción en Oposición a Supresión de Evidencia y Confesión*. Arguyó que el recurrido consintió voluntariamente al análisis de alcohol, por lo que no fue necesario obtener una orden judicial. Además, señaló que previo a la extracción de sangre, el policía encargado de la investigación del accidente le hizo las debidas advertencias de ley.

Para atender este asunto, el Tribunal de Primera Instancia celebró una vista de supresión de evidencia. En ella, testificaron el Agte. Joel González González, el Sgto. Gabriel Cruz Díaz y el enfermero Sr. Kelvin Cruz Romero.

En primer lugar, el agente González González testificó que fue una llamada telefónica la que alertó a la Policía de Puerto Rico sobre el accidente de tránsito ocurrido. Tras la llamada, el oficial indicó que se trasladó al lugar de los hechos para investigar la situación. Sostuvo que, por la posición de los vehículos, era evidente que el camión Mack conducido por el acusado invadió el carril contrario y que fue él quien causó el impacto que provocó la muerte del señor Ortiz Varela. En su testimonio, el agente verbalizó que cuando llegó a la escena, el acusado señor Álvarez De Jesús no se encontraba en el lugar, pues se había dirigido al Hospital Menonita de Cidra.

Por su parte, el sargento Cruz Díaz testificó que luego de conocer que el responsable del choque se encontraba en el Hospital Menonita de Cidra, se trasladó a ese lugar para continuar con la investigación. Al llegar al hospital, indagó sobre el paradero de una persona involucrada en un accidente vehicular. Un médico señaló al señor Álvarez De Jesús. El sargento narró que este se encontraba consciente y tranquilo. Le preguntó si había estado involucrado en el choque, a lo que el señor Álvarez De Jesús contestó que sí. Acto seguido, el sargento se identificó como miembro de la policía, le solicitó información de lo sucedido y, como parte del protocolo de accidentes fatales, le indicó que tenía que hacerle una prueba de índice de alcohol en la sangre. Afirmó que el señor Álvarez De Jesús voluntariamente le dijo que no tenía problema con que le tomara la muestra de sangre. Entonces, el sargento le leyó las advertencias de embriaguez. A preguntas de la defensa, el sargento admitió que el señor Álvarez De Jesús no mostró características comunes de una persona que había ingerido bebidas alcohólicas, como ojos rojizos o un fuerte olor a licor. Recalcó que este le dijo que no tenía inconvenientes con hacerse la prueba, pero se negó a firmar cualquier tipo de documento, como el de las advertencias, a menos que estuviese un abogado a su lado.

Por último, el enfermero Cruz Romero testificó que el 17 de junio de 2021, a las 12:46 a.m., le tomó la muestra de

sangre al señor Álvarez De Jesús y que esta arrojó un .18% de alcohol por volumen de sangre.

Luego de escuchar esos testimonios, el Tribunal de Primera Instancia emitió una *Resolución* en la cual: (a) sostuvo la admisibilidad de las admisiones realizadas por el señor Álvarez De Jesús[1], y (b) **suprimió el resultado de la prueba de sangre.**

El foro primario suprimió el análisis toxicológico porque, si bien la prueba de sangre fue provista por el recurrido de forma voluntaria y libre de toda coacción, en ningún momento se le apercibió de que el Estado pretendía obtener evidencia para su posible encausamiento criminal. Además, conforme a los testimonios vertidos, entendió que no hubo motivos fundados para creer que el señor Álvarez De Jesús estaba conduciendo bajo los efectos de bebidas alcohólicas, ya que al momento de someterse a la prueba de sangre no evidenciaba conducta o apariencia característica de una persona embriagada. El tribunal también cuestionó el valor de la prueba debido a que el Estado no desfiló evidencia que indicara a qué hora el acusado salió de la

---

[1] En la *Declaración de Persona Sospechosa* el señor Álvarez De Jesús expresó:
Salí de trabajar a eso de las 5:00 p.m. de la [C]arr 173 de [A]guas [B]uenas un compañero se le rompió el cami[ó]n y lo ayud[é] en ese momento me tom[é] un par de cervezas. Sal[í] del lugar rumbo a mi casa en [C]idra y subiendo la 172 trat[é] de e[s]quivar un (roto) frente a la luz de Berríos[,] en ese momento miro por el retrovisor y cuando miro hacia delante sent[í] el impacto. Alcanc[é] a controlar el veh[í]culo rápidamente y trat[é] de brindarle ayuda al otro conductor pero se me hizo difícil ya que el veh[í]culo estaba muy doblado y no pude abri[r] la puerta para ayudarlo. Llegaro[n] varias personas y me trataron de ayuda[r] a abrir la puerta pero no pudimos. Cuando me baj[ó] la adrenalina[,] las piernas se me durmiero[n] ca[y]endo al piso me ayudaro[n] a salir de la v[í]a y me mandaron hacia el Hospital de Cidra donde me atendiero[n] r[á]pidamente.

escena, ni a qué hora llegó al Hospital Menonita de Cidra, y qué, si algo, había hecho el acusado mientras se trasladaba a la clínica.

Basándose en lo antedicho, el tribunal determinó que al obtenerse la muestra de sangre se llevó a cabo una renuncia al derecho a la no autoincriminación sin conocimiento del derecho abandonado y sin saber las consecuencias de esa decisión, de forma contraria al ordenamiento jurídico.

Tras una solicitud de reconsideración que fue declarada no ha lugar, el Ministerio Público presentó una petición de *certiorari* ante el Tribunal de Apelaciones. En dicha petición esbozó que el Tribunal de Primera Instancia erró al suprimir el resultado de la prueba de sangre, sobre todo después de concluir que el señor Álvarez De Jesús consintió voluntariamente a que se la tomaran. El acusado, por su parte, presentó su oposición en la que arguyó que el Ministerio Público no estableció que la renuncia al derecho fue consciente e inteligente, razón por la cual debió ser suprimida la pieza evidenciaria.

El Tribunal de Apelaciones evaluó la controversia y entendió que el foro de instancia no incurrió en error o abuso de discreción cuando sentenció que el señor Álvarez De Jesús no consintió de manera inteligente al mencionado registro. Por ello, denegó la expedición del auto, así como la subsiguiente moción de reconsideración.

Inconforme, el Estado acudió ante nos. Señaló que el Tribunal de Apelaciones se equivocó al suprimir el examen

toxicológico aunque el señor Álvarez De Jesús consintió libre y voluntariamente a realizárselo.

En riposta, el acusado también compareció ante este Tribunal y expuso que, aun cuando el derecho contra registros irrazonables es renunciable, tal renuncia solamente es válida cuando se produce de forma voluntaria, consciente e inteligente. Sostuvo que el Demerol que le fue suministrado en el Hospital pudo haber disminuido su capacidad para consentir. De igual modo, aseveró que el Ministerio Público no tenía motivos fundados para solicitar la prueba de sangre. En atención a estos puntos, defendió que la supresión de la muestra de sangre debía sostenerse.

Expedido el auto de *certiorari*, y con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

II

A. *La protección contra registros y allanamientos irrazonables*

Tanto la Constitución de Puerto Rico como la Constitución de Estados Unidos contienen disposiciones que protegen a los ciudadanos contra registros y allanamientos irrazonables que lleve a cabo el Estado en los hogares, vehículos, efectos personales o cualquier propiedad o lugar en el que el ciudadano tenga una expectativa razonable a la intimidad. Pueblo v. López Colón, 200 DPR 273, 283 (2018). Esta protección es considerada como una de las más importantes libertades establecidas por la Carta de Derechos de la Constitución de Estados Unidos. Véase, P.A. Hubbart, *Making Sense of Search and Seizure Law, A Fourth Amendment*

*Handbook*, 2nda ed., Ed. Carolina Academic Press, Carolina del Norte, 2015, pág. 5.

En sí, este derecho emana de la Cuarta Enmienda de la Constitución federal, que estipula:

> No se violará el derecho del pueblo a la seguridad de sus personas, hogares, documentos y pertenencias, contra registros y allanamientos irrazonables, y no se expedirá ningún mandamiento, sino [en] virtud de causa probable, apoyado por juramento o promesa, y que describa en detalle el lugar que ha de ser allanado, y las personas o cosas que han de ser detenidas o incautadas. Emda. IV, Const. EE. UU., LPRA, Tomo 1.

Por su parte, el texto de la Constitución de Puerto Rico refleja una protección más amplia que la precitada homóloga federal. Pueblo v. Rolón Rodríguez, 193 DPR 166, 175 (2015). A esos efectos, la Sec. 10 del Art. II de la Constitución de Puerto Rico establece lo siguiente:

> No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.
>
> No se interceptará la comunicación telefónica.
>
> Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.
>
> Evidencia obtenida en violación de esta sección será inadmisible en los tribunales. Art. II, Sec. 10, Const. PR, LPRA, Tomo 1.

A ambas cláusulas constitucionales se les reconoce como la "matriz de la garantía de los derechos individuales ante la intervención injustificada del Estado con el ciudadano". Pueblo v. Salamanca Corchado, 210 DPR 592, 591 (2022); Pueblo

v. Nieves Vives, 188 DPR 1, 12 (2013). Históricamente, en Puerto Rico esta garantía ha perseguido tres objetivos principales: (1) proteger la intimidad y dignidad de los seres humanos, (2) amparar sus documentos y otras pertenencias, e (3) interponer la figura de un juez entre los funcionarios públicos y la ciudadanía para ofrecer mayor garantía de razonabilidad en la intrusión. Pueblo v. Rolón Rodríguez, supra, pág. 175; Pueblo v. Soto Soto, 168 DPR 46, 53 (2006); ELA v. Coca-Cola Bott. Co., 115 DPR 197, 207 (1984).

Como podemos apreciar, las mencionadas disposiciones constitucionales están intrínsecamente atadas a otros derechos reconocidos en nuestro ordenamiento, como la inviolabilidad de la dignidad del ser humano y el derecho a la intimidad. Pueblo v. Rolón Rodríguez, supra, pág. 175.

Si bien el Estado tiene un deber de combatir y prevenir la criminalidad, la Constitución de Puerto Rico establece los parámetros mínimos que tienen que seguir los agentes del gobierno al momento de realizar un registro contra cualquier persona, a fin de armonizar la seguridad estatal y los derechos de todos los ciudadanos. Íd., pág. 175. Estos parámetros contienen exigencias de índole sustantiva y procesal. Por ejemplo, el requisito de causa probable y la razonabilidad de la intrusión figuran como exigencias sustantivas. Íd., págs. 177-178. En cambio, la necesidad de que la causa probable esté basada en juramento o afirmación, la exigencia de una orden que incluya una descripción

detallada del lugar, los objetos o las personas a ser registrados, así como el requerir la interposición de un magistrado, responden a consideraciones de índole procesal. Íd.

Si los agentes del Estado obtienen evidencia en violación a estas exigencias, lo recopilado será inadmisible en los tribunales. Art. II, Sec. 10, Const. PR, LPRA, Tomo 1; Pueblo v. Rivera Surita, 202 DPR 800, 806 (2019).

**B. *Supresión de evidencia producto de un registro o allanamiento irrazonable***

La regla de exclusión consagrada en la Sec. 10 del Art. II de la Constitución de Puerto Rico persigue, en primer lugar, disuadir y desalentar a los funcionarios del orden público de violar la protección constitucional. Toll v. Adorno Medina, 130 DPR 352, 358 (1992). Además, busca evitar que el Estado se beneficie de sus propios actos ilegales al momento de encausar criminalmente a un ciudadano. Pueblo v. Nieves Vives, supra, pág. 23. La regla, por lo tanto, protege la integridad de los tribunales al no permitir que en los procesos judiciales se utilice evidencia que fue obtenida ilegalmente por apartarse de los requisitos constitucionales y estatutarios que deben observarse al expedir y diligenciar una orden de allanamiento. Pueblo v. Rolón Rodríguez, supra, págs. 181-182; Pueblo v. Rivera Surita, supra, pág. 806; E. L. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos*, Bogotá, Ed. Forum, 1991, Vol. 1, págs. 284-285.

En nuestro ordenamiento procesal penal, la Regla 234 de Procedimiento Criminal, 34 LPRA Ap. II, instrumenta el mandato constitucional de excluir la evidencia ilegalmente obtenida. Pueblo v. Rolón Rodríguez, supra, pág. 182. Mediante el mecanismo provisto en esa regla, una persona agraviada por un allanamiento o registro ilegal podrá solicitar la supresión de la evidencia obtenida por cualquiera de los fundamentos expuestos a continuación:

(a) Que la propiedad fue ilegalmente ocupada sin orden    de allanamiento o registro.
(b) Que la orden de allanamiento o registro es insuficiente de su propia faz.
(c) Que la propiedad ocupada o la persona o sitio registrado no corresponde a la descripción hecha en la orden de allanamiento o registro.
(d) Que no había causa probable para creer en la existencia de los fundamentos en que se basó la orden de allanamiento o registro.
(e) Que la orden de allanamiento fue librada o cumplimentada ilegalmente.
(f) Que es insuficiente cualquier declaración jurada que sirvió de base a la expedición de la orden de allanamiento porque lo afirmado bajo juramento en la declaración es falso, total o parcialmente. Regla 234 de Procedimiento Criminal, supra.

A través de ella, se provee un remedio efectivo para vindicar posibles violaciones al mandato constitucional contra registros y allanamientos irrazonables. Pueblo v. Rolón Rodríguez, supra, págs. 181-182. Reiteradamente hemos determinado que una moción de supresión de evidencia al amparo de la Regla 234 de Procedimiento Criminal no debe conformarse con meramente aludir al inciso aplicable, sino que el promovente deberá expresar con especificidad y precisión los hechos en los que se basa y justifica su petición. Pueblo v. Rolón Rodríguez, supra, pág. 182; Pueblo

v. Serrano Reyes, 176 DPR 437 (2009); Pueblo v. Hernández González, 175 DPR 274, 311 (2009).

C. *Orden judicial como regla general para salvaguardar la razonabilidad de los registros y allanamientos*

Desde hace muchos años el Tribunal Supremo federal reconoció que el propósito principal de la Cuarta Enmienda es "salvaguardar la intimidad y seguridad de los individuos contra las invasiones arbitrarias de los oficiales gubernamentales". (Traducción nuestra). Camara v. Municipal Court of City and County of San Francisco, 387 U.S. 523, 528 (1967). ("[T]o safeguard the privacy and security of individuals against arbitrary invasions by governmental officials"). El máximo foro judicial federal entendió que al evaluar las actuaciones de los agentes del Estado a la luz de esta prerrogativa, lo medular es la razonabilidad de sus acciones. Así, "la Cuarta Enmienda no prohíbe todos los registros y allanamientos iniciados por el Estado; meramente prohíbe aquellos que son irrazonables". (Traducción nuestra). Florida v. Jimeno, 500 U.S. 248, 251 (1991). ("The Fourth Amendment does not proscribe all state-initiated searches and seizures; **it merely proscribes those which are unreasonable**"). (Negrillas suplidas). En sintonía, en Puerto Rico entendimos que esta necesidad obedece a la política pública constitucional de defender la dignidad e intimidad de las personas frente a actuaciones arbitrarias del gobierno. Pueblo v. Salamanca Corchado, supra, pág. 591; Pueblo v. Nieves Vives, supra, pág. 12.

La importancia de salvaguardar la razonabilidad en este tipo de intervenciones del Estado es de tal magnitud que, como norma general, se prohíben los registros y allanamientos sin una orden judicial previa apoyada en una determinación de causa probable. Pueblo v. Salamanca Corchado, supra, pág. 591; Pueblo v. López Colón, supra, pág. 284; Pueblo v. Báez López, 189 DPR 918, 928 (2013). Por eso, un registro efectuado sin mediar una orden judicial activa una presunción de que fue irrazonable e inválido. Pueblo v. López Colón, supra, pág. 284; Pueblo v. Báez López, supra, pág. 930. En estos casos, para poder utilizar la evidencia recopilada, el Ministerio Público viene obligado a rebatir la presunción de invalidez al demostrar la existencia de circunstancias excepcionales que hicieron innecesaria la obtención de la orden y que, por lo tanto, el registro fue legal y razonable. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); Pueblo v. López Colón, supra, pág. 288; Pueblo v. Blase Vázquez, 148 DPR 618, 632-633 (1999).

Algunas de estas excepciones a la norma general de que la policía no puede efectuar un registro sin orden judicial son: (1) un registro incidental a un arresto legal; (*2*) **un registro consentido voluntariamente de forma expresa o implícita;** (3) un registro en situación de emergencia; (4) evidencia ocupada en el transcurso de una persecución; (5) evidencia a plena vista; (6) cuando el agente del orden público obtiene conocimiento de la existencia del material delictivo a través del olfato; (7) evidencia arrojada o

abandonada; (8) un registro o allanamiento de una estructura abandonada; (9) evidencia obtenida durante un registro administrativo, siempre que se cumpla con las limitaciones expresadas en Blassini et als. v. Depto. Rec. Naturales, 176 DPR 454, 463-464 (2009); (10) un registro tipo inventario, o (11) una evidencia obtenida en un lugar público como resultado de la utilización de canes para olfatear. Pueblo v. López Colón, supra, pág. 288; Pueblo v. Báez López, supra, págs. 930-931. Pueblo en interés menor N.O.R., 136 DPR 949, 961 (1994); Pueblo v. Falú Martínez, 116 DPR 828, 839 (1986). Claro está, la aplicación de estas excepciones no es automática y debe examinarse a la luz de los hechos específicos de cada caso. Pueblo v. López Colón, supra, pág. 288; Pueblo v. Báez López, supra, pág. 930.

D. *El consentimiento como excepción a la norma general de que la policía no puede efectuar un registro sin orden judicial previa.*

Como mencionamos en el apartado anterior, es norma conocida que el hecho de que un objeto haya sido incautado sin la orden previa de un tribunal, por sí solo, no conlleva su inadmisibilidad como evidencia obtenida. Pueblo v. Báez López, supra, pág. 930. Esto es así pues el Estado puede demostrar circunstancias particulares que justificaron la intervención policial sin la referida orden, constituyéndose así alguna de las excepciones a la norma general. Íd. Una de las excepciones reconocidas al derecho contra registros y allanamientos irrazonables ocurre cuando media el **consentimiento directo o indirecto para el registro**. Pueblo

v. Miranda Alvarado, 143 DPR 356, 364 (1997); Pueblo en interés menor N.O.R., supra, págs. 965-966; Pueblo v. Falú Martínez, supra, pág. 839. En ese sentido, la jurisprudencia federal nos indica: "It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent". Schneckloth v. Bustamonte, supra, pág. 219. Por ello, se acepta que puede solicitarse el consentimiento para registrar sin existir evidencia de causa probable o motivos fundados, ya que esto provee un mecanismo de pronta exoneración a aquellas personas sobre las cuales se ha sospechado erróneamente. Pueblo v. Acevedo Escobar, 112 DPR 770, 777 (1982).

Debemos recordar que, en el caso de los registros y allanamientos irrazonables, como toda protección constitucional, el titular del derecho puede renunciar válidamente a este. Pueblo v. López Colón, supra, págs. 288-289; Pueblo v. Miranda Alvarado, supra, pág. 364; Pueblo v. Castro Rosario, 125 DPR 164, 170 (1990). Claro está, para que esta renuncia sea válida, debe ser voluntaria y prestada por quien tenga autoridad para ello. Pueblo v. López Colón, supra, págs. 288-289; Pueblo v. Miranda Alvarado, supra, pág. 364; Pueblo en interés menor N.O.R., supra, pág. 964.

A esos efectos, el Prof. Ernesto L. Chiesa Aponte ha manifestado que si una persona accede a un registro contra el cual tenía alguna protección constitucional a su favor, por medio de su consentimiento renuncia a la protección y

queda así validada la actuación gubernamental. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos*, op. cit., pág. 424. El efecto concreto de este suceso es que no progresaría una moción de supresión de evidencia con relación a una incautación producto de un registro consentido. Íd. "Por supuesto, la renuncia debe ser voluntaria[,] es decir, sin coacción física o mental, por parte de las autoridades". Íd.

Respecto a las razones para avalar el consentimiento como una excepción a la norma general de requerir una orden de registro, en U.S. v. Drayton, 536 U.S. 194, 207 (2002), se reconoció:

> In a society based on law, the concept of agreement and consent should be given a weight and dignity of its own. Police officers act in full accord with the law when they ask citizens for consent. It reinforces the rule of law for the citizen to advise the police of his or her wishes and for the police to act in reliance on that understanding. When this exchange takes place, it dispels inferences of coercion.

Además, el Tribunal no ve con buenos ojos una moción de supresión de evidencia tras un registro consentido debido a que el fundamento principal de esta regla de exclusión es el elemento disuasivo ("deterrence") que desalienta a los agentes del gobierno de obtener evidencia reñida con la protección constitucional. Es importante tener en cuenta este fundamento pues, en el contexto de un registro consentido, voluntario y libre de toda coacción, nuestro ordenamiento constitucional no reconoce protección y, por ende, no cabría hablar de funcionarios del orden público a

quienes hay que desanimar de incurrir en conductas contrarias al orden público. Véase, Chiesa Aponte, *Procedimiento criminal y la Constitución: Etapa Investigativa*, San Juan, Eds. Situm, 2017, págs. 253-254; 418-432. "Si la aplicación de la regla de exclusión no tiene valor disuasivo en determinado contexto, cabe defender la inaplicabilidad de la misma". Íd., pág. 253.

La renuncia a este derecho puede ser expresa o implícita (tácita). Pueblo en interés menor N.O.R., supra, pág. 965; Pueblo v. López Colón, supra, pág. 289. Por ejemplo, una forma en la cual se puede prestar el consentimiento de forma tácita es cuando una persona obedece sin protestar al pedido del funcionario público. Pueblo en interés menor N.O.R., supra, pág. 965. Para determinar la validez de la abdicación, ya sea esta expresa o tácita, se considerarán los factores siguientes: (1) si medió fuerza o violencia en su obtención; (2) si el registro se efectuó después de un arresto, y (3) si se encontraban presentes otras personas. Pueblo v. López Colón, supra, pág. 289; Pueblo v. Miranda Alvarado, supra, pág. 364.

Ahora bien, desde el 1994 cuando resolvimos Pueblo en interés menor N.O.R., supra, dejamos meridianamente claro que **para sostener la validez de un registro consentido no se requiere demostrar que el titular del derecho era consciente de su derecho a no consentir.**

E. *La validez del registro consentido no depende del conocimiento previo del derecho a no consentir*

En 1973, el Tribunal Supremo de Estados Unidos atendió en Schneckloth v. Bustamonte, supra, una interrogante muy parecida a la que hoy nos ocupa. En esa ocasión, un agente del orden público le preguntó a un ciudadano si podía registrar su vehículo, a lo que el ciudadano contestó: "sure, go ahead". Íd., pág. 220. El registro produjo evidencia incriminatoria que el acusado trató de suprimir bajo el argumento de que no se le advirtió de su derecho a no consentir. Plasmada la controversia, el Tribunal Supremo federal dictaminó que no se violó la Cuarta Enmienda por el hecho de que la pesquisa se realizó sin que el individuo tuviera conocimiento de que se podía negar al registro y aunque el policía no se lo hubiere advertido. Íd., págs. 231-234.

En palabras más sencillas, para renunciar a este derecho no se exige conocimiento previo del mismo; solo se necesita un gesto de voluntariedad, ausencia de coacción física o psicológica, considerada la totalidad de las circunstancias. Íd., págs. 248-249. Esto es así ya que el derecho aquí en cuestión no es uno vinculado a las garantías dirigidas a garantizar un juicio justo. Íd., págs. 236-238. En Puerto Rico adoptamos directamente este análisis en Pueblo en interés menor N.O.R., supra, por lo que no hay "factura más ancha" al amparo de la Sec. 10 de la Carta de Derechos de la Constitución de Puerto Rico, Art. II, Sec. 10, Const. PR, supra. Chiesa Aponte, *Procedimiento criminal y la Constitución: Etapa Investigativa*, op. cit., pág. 421. El

registro por consentimiento se rige por las mismas normas tanto en el ordenamiento constitucional local como en el federal. Íd., pág. 432.

Al examinar la totalidad de las circunstancias que rodearon la voluntariedad del consentimiento, debemos prestar especial consideración a las características personales de quien consiente y al ambiente en el cual se otorga. Pueblo v. López Colón, supra, pág. 289. Sobre el ambiente, habría que considerar si al momento de consentir la persona se encontraba en un lugar público o aislado, si fue intimidado, amenazado o maltratado por la Policía, o si descansó en representaciones falsas de los agentes del orden público. Íd. Por otro lado, entre las características personales a evaluar se encuentran:(1) edad; (2) inteligencia promedio; (3) nivel de educación; (4) si la persona estaba intoxicada o bajo la influencia de drogas al momento de prestar el consentimiento; (5) si la persona consintió luego de ser informada de su derecho de rehusarse a consentir o habérsele dado las advertencias "Miranda", y (6) si tenía conocimiento de las protecciones que provee el sistema legal a los sospechosos de un delito, por haber sido arrestado anteriormente. Íd., págs. 289-290; Schneckloth v. Bustamonte, supra, pág. 226; Pueblo v. Santiago Alicea I, 138 DPR 230, 256 (1995). Por último, el conocimiento del derecho a no consentir es un factor que el tribunal puede tomar en cuenta al evaluar la voluntariedad de la renuncia,

**pero no es elemento necesario para determinar su validez.**
Schneckloth v. Bustamonte, supra, pág. 249.

F. *Ley de Vehículos y Tránsito de Puerto Rico*

En lo que respecta al consentimiento, el Art. 7.09 de la Ley Núm. 22-2000, según enmendada, conocida como la Ley de Vehículos y Tránsito de Puerto Rico, dispone:

[…].

(c) Se considerará que toda persona que transite por las vías públicas de Puerto Rico conduciendo un vehículo, un vehículo de motor, un vehículo pesado de motor o un vehículo todo terreno **habrá prestado su consentimiento para someterse a la prueba de campo estandarizada de sobriedad (Standard Field Sobriety Test) así como al análisis químico o físico de su sangre, o de su aliento o de cualquier sustancia de su cuerpo,** para los fines que se expresan en este Capítulo. […].

[…].

(e) Además de lo dispuesto en el inciso (c) de este Artículo, cualquier agente del orden público podrá requerirle a cualquier persona que esté conduciendo o haciendo funcionar un vehículo de motor que se someta a cualquiera de las pruebas iniciales, ya sea la prueba de campo estandarizada de sobriedad (Standard Field Sobriety Test) y/o la prueba de aliento y/o cualquier otra prueba establecida. Estas pruebas serán practicadas en el lugar de la detención, salvo que por circunstancias de seguridad no se pueda realizar en el lugar de la detención, en cuyo caso se podrá realizar en un lugar cercano a la detención y/o en el cuartel más cercano, si dicho agente: (1) Tiene motivo fundado para sospechar que la persona ha ingerido alcohol o ha utilizado sustancias controladas; o (2) Si ocurre un accidente y la persona se hallaba conduciendo uno de los vehículos involucrados en el accidente. (Negrillas suplidas). 9 LPRA sec. 5209.

Con este marco jurídico en mente, pasemos ahora a disponer de la controversia.

III

En el recurso ante nuestra consideración, el Ministerio Público sostuvo que los foros hermanos erraron al suprimir —bajo supuesta protección contra registros y allanamientos— la muestra de sangre que el señor Álvarez De Jesús consintió a dar de manera libre y voluntaria. Le asiste la razón al Estado.

Para comenzar a realizar este ejercicio analítico, la primera interrogante que debemos atender es si la muestra de sangre obtenida del señor Álvarez De Jesús constituyó un registro que, por haberse efectuado sin orden judicial, activa una presunción de invalidez. La contestación es que sí. Tanto la jurisprudencia local como la federal reconocen que la toma de sangre a un sujeto por parte de la Policía constituye un registro que amerita protección.

Específicamente, la garantía constitucional contra registros irrazonables aplica en toda su extensión cuando el Estado pretende someter a un ciudadano a una prueba de sangre para conocer el porcentaje de alcohol en su sistema con el fin de utilizar el resultado en una investigación criminal. Birchfield v. North Dakota, 579 U.S. 438, 455 (2016); Missouri v. McNeely, 569 U.S. 141, 148 (2013); Pueblo v. Falú Martínez, supra, pág. 838. Esto se debe a que la toma de sangre constituye una intromisión física a la intimidad personal. Missouri v. McNeely, supra, pág. 148.

"Por constituir dicha intervención un registro, está sujeta al requisito de orden judicial". Pueblo v. Falú

Martínez, supra, pág. 838. Empero, en la sección anterior discutimos que existen ciertas excepciones a la norma general de que el Estado no puede efectuar un registro sin orden judicial, entre las que se encuentra **el registro consentido voluntariamente**. Pueblo v. Miranda Alvarado, supra, pág. 364. Y es que, si una persona consiente a un registro contra el cual tenía algún tipo de protección, la renuncia y no progresaría la supresión de la evidencia obtenida. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos*, op. cit., pág. 424. **El caso a seguir es Pueblo v. Falú Martínez, supra, en donde se admitió que una extracción de sangre es un registro que activa la protección contra registros irrazonables, pero se resolvió que la misma fue válida porque el acusado consintió.**

Ante este panorama, debemos considerar si el registro realizado al señor Álvarez De Jesús se produjo tras obtener válidamente su consentimiento para llevarlo a cabo. Sobre este particular, el Tribunal de Primera Instancia determinó lo siguiente:

> Como indicamos, el acusado se sometió a la prueba de sangre voluntariamente y en ningún momento objetó o expuso reparo a dar la muestra. Tampoco encontramos en la evidencia que [se] sustente una determinación [de] que el acusado haya sido coaccionado/intimidado /amenazado o sometido a fuerza o violencia. Somos del criterio que no se ha presentado evidencia de coacción de clase alguna, ya sea directa o indirecta, por lo que la muestra fue provista por el acusado fue [sic] de forma voluntaria. Resolución, pág. 3; Apéndice del *certiorari*, pág. 62.

A los ojos del foro primario, quien de primera mano tuvo ante sí la totalidad de la evidencia presentada en este

caso, **el señor Álvarez De Jesús brindó la muestra de sangre voluntariamente.** La prueba demostró que no objetó ni expresó reparo cuando el oficial del orden público le informó que deseaba realizar el registro físico. A los ojos del Tribunal de Primera Instancia, el acusado no fue en ningún momento, directa o indirectamente, coaccionado, intimidado, amenazado o sometido a consentir a la prueba de sangre por fuerza o violencia.

Esta conclusión merece deferencia de nuestra parte, ya que los juzgadores de primera instancia están en mejor posición que los jueces revisores al momento de apreciar y aquilatar este tipo de evidencia. Pueblo v. García Colón I, 182 DPR 129, 174 (2011). El Tribunal de Primera Instancia consideró la totalidad de las circunstancias que rodearon la voluntariedad del consentimiento y los parámetros que hemos reconocido jurisprudencialmente para evaluar la validez de una renuncia de este tipo.

Ante estas circunstancias, queda claro que el Ministerio Público logró rebatir la presunción de invalidez que se originó al efectuar el registro sin orden judicial. El consentimiento voluntariamente ofrecido hizo innecesaria la obtención de la orden y, por lo tanto, el registro fue legal y razonable. Como sintetiza el profesor Chiesa, lo que "se requiere es que la renuncia sea voluntaria sin coacción a la luz de las circunstancias de la situación. No se exige que la persona tenga conocimiento del derecho al cual renuncia ni que el agente del gobierno que solicita el

consentimiento para el registro le advierta a la persona sobre tal derecho". Chiesa Aponte, *Procedimiento criminal y la Constitución: Etapa Investigativa*, op. cit., págs. 418-419.

A pesar de esto, el Tribunal de Primera Instancia suprimió la prueba de sangre y su resultado, por entender que el registro se hizo sin pleno conocimiento del derecho abandonado y sin conocer las consecuencias de esa decisión. Enfatizó que al señor Álvarez De Jesús en ningún momento se le apercibió que el Estado buscaba obtener evidencia para su posible encausamiento criminal.

Esta determinación del foro primario se aparta de lo estipulado por el ordenamiento jurídico dado que un registro consentido voluntariamente es válido, aunque la persona no tenga conocimiento de su derecho a no consentir. Pueblo en interés menor N.O.R., supra, pág. 966. Por esta razón, cometió un error el Tribunal de Primera Instancia al suprimir la pieza evidenciaria bajo el pretexto de que el policía no le advirtió sobre los procesos a los cuáles se podría enfrentar por su conducta ni que podía negarse al registro. En el campo de los registros y allanamientos, los agentes del orden público no están obligados a advertirle a los ciudadanos sobre estos particulares. Schneckloth v. Bustamonte, supra, págs. 231-234. Como mencionamos, el señor Álvarez De Jesús —voluntariamente y sin presentar objeción— accedió a la muestra de sangre. En la medida en que él es la persona autorizada para prestar esa autorización y que en su

obtención no medió coacción, no puede progresar una moción de supresión sobre el producto incautado en el registro consentido.

Al parecer los foros inferiores confundieron el derecho constitucional contra registros y allanamientos irrazonables con la protección constitucional a la no autoincriminación. Para que un ciudadano renuncie a la protección de no incriminarse mediante su propio testimonio, sí se requiere que la renuncia sea voluntaria, libre de toda coacción, a consciencia del derecho abandonado y de las consecuencias que acarrea ese abandono. Pueblo v. Marrero, 2023 TSPR 150, 213 DPR _ (2023). **Sin embargo, el derecho a no incriminarse está limitado a manifestaciones orales**. Pueblo v. Falú Martínez, supra, pág. 834.

En ese sentido, en Pueblo v. Falú Martínez, supra, págs. 834-835, manifestamos:

> Lo que el privilegio [contra la autoincriminación] sí excluye son las comunicaciones o testimonio del individuo, **no la evidencia real o física derivada de la persona del sospechoso o acusado.**
> […]
> […]El límite del privilegio es claro ... una inspección de las características físicas por el Tribunal o por los testigos no puede constituir una violación del privilegio [a no incriminarse], porque no exige nada del acusado como testigo, esto es, con la responsabilidad de su testimonio ... **lo que se obtiene del acusado por medio de ese acto no es una declaración acerca de su cuerpo sino su cuerpo en sí.** (Negrillas suplidas).

Schmerber v. California, 384 U.S. 757 (1966), es el caso principal en este tema. Luego de un accidente vehicular se extrajo una muestra de sangre a uno de los conductores tras sospechar que manejaba en estado de embriaguez. El

Tribunal Supremo de Estados Unidos atendió la controversia de si la obtención de la prueba toxicológica constituía una violación contra la no autoincriminación. Dictaminó que, en la medida en que no se obligó a la persona a testificar contra sí mismo ni a proveer evidencia de carácter comunicativa, el privilegio contra la autoincriminación no protegía la muestra de sangre obtenida. El examen de alcohol constituye un registro, no un testimonio oral.

Amparándonos en lo anterior, no es correcto suprimir la muestra de sangre obtenida del señor Álvarez De Jesús bajo el pretexto de que no se le informó sobre las consecuencias que acarreaba su decisión, o de la protección abandonada, pues la prueba obtenida no constituye una declaración contra él que goce de ese resguardo. Sin lugar a dudas estamos ante un registro que, por haber sido voluntario y consentido, es admisible en evidencia.

Por otro lado, el foro primario tomó en cuenta en su decisión que no hubo motivos fundados para creer que el acusado estaba conduciendo bajo los efectos de bebidas alcohólicas, pues al momento de someterse a la prueba de sangre este no evidenciaba conducta o apariencia característica de una persona embriagada. Al parecer se ignoró que, hayan tenido o no motivos fundados, los agentes del orden público pueden solicitar el consentimiento de la persona intervenida sin que necesariamente exista evidencia de causa probable. Pueblo v. Acevedo Escobar, supra, pág. 778. Por ello, como el señor Álvarez De Jesús consintió

voluntariamente a hacerse la prueba, no es relevante si los policías tuvieron o no motivos para creer que condujo con un nivel de alcohol en la sangre que excedía el máximo permitido por ley.

Por último, el acusado sugiere que el Demerol suministrado en el hospital pudo haber disminuido su capacidad para consentir. No obstante, el Tribunal de Primera Instancia pasó juicio sobre el estado cognitivo del señor Álvarez De Jesús y encontró que este no evidenciaba rasgos de que estuviese ebrio o inhabilitado mentalmente. Evidencia de que sí estaba al tanto de todo lo que estaba sucediendo es que, aunque dijo que no tenía inconvenientes con hacerse la prueba, se negó a firmar cualquier tipo de documento, como el de las advertencias, a menos que estuviese un abogado a su lado. Además, la propia Ley de Vehículos de Tránsito de Puerto Rico establece que se considerará que toda persona que transite por las vías públicas en un vehículo de motor habrá prestado su consentimiento para someterse a un examen toxicológico si ocurre un accidente y dicha persona se hallaba conduciendo uno de los vehículos involucrados en el mismo. Art. 7.09 de la Ley Núm. 22-2000, 9 LPRA sec. 5209.

En conclusión, a la luz de la totalidad de las circunstancias, la renuncia del señor Álvarez De Jesús a su derecho a protegerse contra registros y allanamientos irrazonables fue libre, voluntaria y ausente de todo rasgo de coacción. Por lo tanto, una moción de supresión de

evidencia no debe progresar bajo este escenario, en donde se incautó una muestra de sangre después de llevar a cabo un registro consentido.

IV

Por los fundamentos antes expuestos, se revoca el dictamen del Tribunal de Apelaciones que confirmó la determinación emitida por el Tribunal de Primera Instancia mediante la cual se suprimió la prueba de sangre del señor Álvarez De Jesús. Se devuelve el caso al foro primario para que los procedimientos continúen de forma compatible con lo aquí dispuesto.

Se dictará Sentencia en conformidad.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

      v.

José Miguel Álvarez De Jesús      CC-2023-0514

    Recurrido

SENTENCIA

En San Juan, Puerto Rico, a 12 de agosto de 2024.

Por los fundamentos antes expuestos, en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, se revoca el dictamen del Tribunal de Apelaciones que confirmó la determinación emitida por el Tribunal de Primera Instancia mediante la cual se suprimió la prueba de sangre del señor Álvarez De Jesús. Se devuelve el caso al foro primario para que los procedimientos continúen de forma compatible con lo aquí dispuesto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Colón Pérez emitió una Opinión disidente a la cual se unieron la Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Estrella Martínez.

El Juez Asociado señor Estrella Martínez disiente y hace constar la expresión siguiente a la que se unió la Jueza Presidenta Oronoz Rodríguez:

> Como garantes de los derechos individuales, resulta preocupante lo pautado en la *Opinión Mayoritaria* por su efecto en la consecución del consentimiento a los registros y allanamientos por parte de aquellos que son sospechosos de delitos.

En esta instancia, el Estado tomó ventaja del desconocimiento del Sr. José Miguel Álvarez De Jesús (señor Álvarez De Jesús) sobre sus propios derechos para obtener acceso a su prueba de alcohol en la sangre sin una orden judicial, táctica que tanto el Tribunal de Primera Instancia como el Tribunal de Apelaciones rechazaron. No obstante, este Tribunal hoy concluye que el Estado no está obligado a informar a la persona que tiene derecho a negarse al registro o tan siquiera advertirle de las posibles consecuencias penales que puede acarrear su aquiescencia. Entiéndase, que un consentimiento desposeído de conocimiento con respecto a qué exactamente implica ofrecerlo es perfectamente válido y en línea con las exigencias constitucionales de nuestro ordenamiento.

Como se sabe, un análisis de sangre para detectar la concentración de alcohol en el organismo constituye un registro. *Birchfield v. North Dakota*, 136 S.Ct. 2160, 2173 (2016). Debido a cuán intrusivo es un examen de esta naturaleza, la razonabilidad de este debe determinarse a la luz de la alternativa disponible menos invasiva. Íd., pág. 2184. Por consiguiente, el Estado tiene que demostrar de forma satisfactoria la justificación para emplear la alternativa más onerosa sin haber obtenido una orden judicial. Íd. Ahora bien, el consentimiento para un registro de esta naturaleza puede ser implícito, es decir, cuando "una persona obedece sin protestar al pedido de un funcionario; la persona no accede expresamente pero su acto, en unión a un examen de la totalidad de las circunstancias, demuestra su intención de consentir el registro." *Pueblo en interés menor NOR*, 136 DPR 949, 965 (1994).

Conforme se desprende del expediente ante nuestra consideración, previo a solicitársele una muestra de sangre, el señor Álvarez De Jesús no fue advertido de su derecho a negarse a esta o, incluso, de que tal muestra era parte de una investigación de naturaleza criminal. De hecho, según indica el propio Estado en su recurso al recontar lo declarado durante las vistas evidenciarias, el agente del orden público que acudió al hospital en búsqueda del recurrido dijo al señor Álvarez De Jesús que **"tenía** que tomarle una prueba de sangre como parte del protocolo". Entiéndase, que el señor

Álvarez De Jesús aparenta haber ofrecido su consentimiento con solo la idea errada de que ello era obligatorio.

Es evidente que el Estado pretende reducir la validez de un consentimiento a una definición de voluntariedad enteramente despojada de cualquier noción de conocimiento sobre la naturaleza o las consecuencias de aquello a lo que se consciente en primer lugar y, por demás, lavarse las manos de cualquier responsabilidad sobre tal desconocimiento. Así hoy lo avala este Tribunal y no puedo estar de acuerdo con ello. Como puede verse, la totalidad de las circunstancias bajo las cuales se ofreció el consentimiento en este caso debió inclinar la balanza hacia la supresión de los resultados del registro, tal y como fue correctamente determinado por el Tribunal de Primera Instancia y el Tribunal de Apelaciones.

Así las cosas, por entender que los dictámenes recurridos no erraron en repeler la erosión más a fondo del concepto del consentimiento para propósitos de un registro sin orden judicial, expreso mi disconformidad con lo hoy pautado por una mayoría de este Tribunal.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

      v.                          CC-2023-0514     *Certiorari*

José Miguel Álvarez De Jesús

    Recurrido

Opinión disidente emitida por el Juez Asociado señor COLÓN PÉREZ a la cual se unen la Jueza Presidenta ORONOZ RODRÍGUEZ y el Juez Asociado señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico a 12 de agosto de 2024.

Por considerar que, a la hora de consentir a un registro y allanamiento sin previa orden judicial, -- como condición para su validez --, es necesario que el agente del orden público que vaya a realizarlo le informe a la persona a ser intervenida que, entre otras cosas, ésta tiene un derecho, de naturaleza constitucional, a rehusarse a consentir el mismo, enérgicamente disentimos del curso de acción seguido por una mayoría de mis compañeros y compañera de estrado en la causa de epígrafe. Estos últimos, erradamente, y en un choque frontal con la normativa constitucional que, en temas como estos, aplica en la jurisdicción estatal, entienden que ello no es necesario. Se equivocan. Veamos.

I.

El presente caso se originó como consecuencia de un accidente vehicular, de carácter fatal, ocurrido el 16 de junio de 2021 en la Carretera Núm. 172, jurisdicción del Municipio de Cidra. A raíz de lo anterior, el Ministerio Público presentó cuatro denuncias criminales en contra del Sr. José Miguel Álvarez De Jesús (en adelante, "señor Álvarez De Jesús"). En éstas, el Estado alegó que el señor Álvarez De Jesús, conduciendo un camión negligentemente y bajo los efectos de bebidas embriagantes, invadió el carril contrario al suyo e impactó frontalmente cierto automóvil que era conducido por el Sr. Carlos Ortiz Varela (en adelante, "señor Ortiz Varela"), ocasionándole la muerte a este último.

Por esa alegada conducta, al señor Álvarez De Jesús se le imputaron violaciones a los artículos 5.07, 7.02 y 7.06 de la Ley Núm. 22 de 7 de enero de 2000, según enmendada, mejor conocida como *Ley de Vehículos y Tránsito de Puerto Rico*, 9 LPRA secs. 5127, 5202 y 5206. Así pues, habiéndose encontrado causa probable para arresto y para acusar a este último, -- y en lo aquí pertinente --, el 26 de abril de 2022 el señor Álvarez De Jesús presentó ante el Tribunal de Primera Instancia una *Moción de supresión de evidencia* al amparo de la Regla 234 de las de Procedimiento Criminal. 34 LPRA Ap. II. Ello, con el propósito de suprimir el resultado de determinada prueba de alcohol en la sangre que se le realizó el día del accidente, -- el cual arrojó un 0.18% de

alcohol en su sangre --, así como ciertas admisiones que efectuó a agentes del orden público el mismo día.

Según alegó el señor Álvarez De Jesús en la moción a la que hemos hecho referencia, dicha evidencia fue sustraída en violación a sus derechos constitucionales. **Sobre la prueba de alcohol en la sangre, en particular, manifestó que ésta había sido el resultado de un registro ilegal, pues no hubo una orden judicial a esos fines.**

En respuesta a lo anterior, el 25 de mayo de 2022 el Ministerio Público presentó una *Moción en oposición a supresión de evidencia y confesión*. **En dicho escrito, el Estado planteó que la prueba de alcohol había sido tomada conforme a derecho, pues el señor Álvarez De Jesús había consentido voluntariamente a ésta. Además, adujo que antes de extraérsele la sangre, el agente de la Policía de Puerto Rico encargado de la investigación del caso, le hizo las advertencias exigidas por ley.**

En aras de poder disponer de la solicitud de supresión de evidencia ante su consideración, los días 6 de diciembre de 2022 y 7 de marzo de 2023 el foro primario celebró la vista de rigor. El primer testigo en declarar lo fue el agente de la Policía Joel González González (en adelante, "agente González González").

El agente González González manifestó que el día 16 de junio de 2021 recibió una llamada en la que le informaron sobre cierto accidente ocurrido en la Carretera Núm. 172, jurisdicción del Municipio de Cidra, razón por la cual se

personó en el lugar de los hechos. Una vez allí, el mencionado agente del orden público testificó que, según su apreciación de la posición en que quedaron los automóviles, el conductor del camión había invadido el carril contrario al suyo y había causado la muerte del señor Ortiz Varela.

El agente González González manifestó, además, que, al llegar a la escena del accidente, el señor Álvarez De Jesús no se encontraba presente, pues, según le fue informado, éste se había trasladado al Hospital Menonita de Cidra. Acto seguido, el mencionado agente del orden público señaló que el sargento Gabriel Cruz Díaz de la Policía de Puerto Rico (en adelante, "sargento Cruz Díaz") se dirigió al referido hospital con "**un frasco con el fin de llevar a cabo el proceso para determinar si este tenía alcohol en su organismo**".[1]

Finalizado el testimonio del agente González González, como segundo testigo del Ministerio Público, declaró el sargento Cruz Díaz. Éste manifestó que, luego de conocer que el señor Álvarez De Jesús se encontraba en el ya mencionado hospital, acudió al mismo con el fin de continuar la investigación del accidente. Según relató, al llegar al Hospital Menonita, y luego de procurar por la persona que había estado involucrada en el accidente de la Carretera Núm. 172, jurisdicción del Municipio de Cidra, éste encontró al señor Álvarez De Jesús, quien parecía estar consciente y

---

[1] (Énfasis suplido). *Petición de certiorari*, pág. 7. Véase, además, *Apéndice del certiorari*, Anejo VIII, minuto 00:09:50; y Anejo IX, minuto 01:01:18.

tranquilo, y quien la afirmó que, en efecto, había estado implicado en el referido accidente.

De igual manera, el sargento Cruz Díaz declaró que, tras identificarse como agente de la Policía de Puerto Rico, le requirió al señor Álvarez De Jesús cierta información sobre lo sucedido. **Asimismo, le indicó que, como parte del protocolo a seguirse en accidentes de carácter fatal, le tenía que hacer una prueba de índice de alcohol en su sangre.**[2] Además, declaró que, ante dicha solicitud, el señor Álvarez De Jesús accedió voluntariamente a realizarse la referida prueba, aun cuando se negó a firmar cualquier tipo de documento en ausencia de su abogado.[3]

Por otro lado, a preguntas del abogado de defensa, el sargento Cruz Díaz manifestó que, al momento de su intervención, el señor Álvarez De Jesús no mostraba los signos comunes de una persona en estado de embriaguez. Además, admitió que, previo a someterlo a la prueba de alcohol en la sangre, no inquirió sobre las circunstancias personales del señor Álvarez De Jesús ni sobre su estado clínico.

Por último, y luego del sargento Cruz Díaz terminar su testimonio, como tercer testigo del Ministerio Público,

---

[2] **Según surge de la regrabación de la vista de supresión de evidencia celebrada el 7 de marzo de 2023 que consta en autos, el sargento Gabriel Cruz Díaz testificó: "y acto seguido le notifico que tengo que realizarle una prueba de sangre que es parte del protocolo".** (Énfasis suplido). *Apéndice del certiorari*, Anejo IX, minuto 00:09:50.

[3] Según surge de los autos, antes de acceder a la toma de sangre, el señor Álvarez De Jesús preguntó por el estado en el que se encontraba la otra persona involucrada en el accidente. A dicha interrogante, el sargento Gabriel Cruz Díaz le contestó "que no tenía información, pero que se lo llevaron vivo al hospital". *Petición de certiorari*, pág. 9.

declaró el enfermero Kelvin Cruz Romero (en adelante, "señor Cruz Romero"). Este sostuvo que, en la madrugada del día 17 de junio de 2021, le tomó una muestra de sangre al señor Álvarez De Jesús, la cual arrojó un 0.18% de alcohol en su organismo.[4] Además, manifestó que previo a realizar la referida prueba, le había suministrado determinada cantidad del medicamento Demerol al señor Álvarez De Jesús.

**Así las cosas, finalizado el desfile de prueba por parte del Ministerio Público, y luego de haber apreciado y aquilatado con detenimiento la misma, el Tribunal de Primera Instancia dictó una *Resolución* mediante la cual suprimió el resultado de la prueba de alcohol en la sangre que le fue realizada al señor Álvarez De Jesús.[5] Lo anterior, tras el foro primario haber concluido que la referida prueba de alcohol en la sangre fue realizada en violación al derecho constitucional contra la autoincriminación del señor Álvarez De Jesús.**

Según razonó el Tribunal de Primera Instancia, el señor Álvarez De Jesús no había renunciado válidamente a la aludida protección constitucional. En específico, el foro primario determinó que éste no tuvo conocimiento del derecho abandonado ni conocía las consecuencias de su decisión.

---

[4] El testigo Cruz Romero también manifestó que fue el sargento Cruz Díaz quien le brindó el tubo de ensayo en el que colocó la muestra de sangre que le tomó al señor Álvarez De Jesús. *Apéndice del certiorari*, Anejo IX, minuto 01:01:20.

[5] Sobre las admisiones hechas por el señor Álvarez De Jesús, el Tribunal de Primera Instancia mantuvo la admisibilidad de las mismas.

Inconforme con dicha determinación, el Ministerio Público acudió al Tribunal de Apelaciones mediante un recurso de *Certiorari*. En éste, el Estado arguyó, en esencia, que el Tribunal de Primera Instancia había errado al suprimir el resultado de la prueba de alcohol en la sangre realizada al señor Álvarez De Jesús, aun cuando ese mismo foro concluyó que éste había accedido a ella de forma voluntaria.

Por su parte, y en oposición, el señor Álvarez De Jesús adujo que el Ministerio Público no probó que la renuncia a la protección constitucional contra registros y allanamientos irrazonables hubiese sido de forma consciente e inteligente. Por tanto, sostuvo que la toma de una muestra de sangre que se le realizó fue contraria a derecho.

**Tras considerar los planteamientos realizados ante sí por las partes con interés en la causa de epígrafe, y luego de haber examinado tanto el expediente del caso como la regrabación de la vista de supresión de evidencia en cuestión, el foro apelativo intermedio emitió una *Resolución* mediante la cual denegó expedir el auto. Lo anterior, por considerar que no existían circunstancias que demostraran que el foro primario hubiese incurrido en error o en abuso de discreción.**

En desacuerdo con lo resuelto por el Tribunal de Apelaciones, el Ministerio Público acudió ante nos mediante una *Petición de certiorari*. En esencia, argumenta que el Tribunal de Primera Instancia erró al suprimir el resultado de la prueba de alcohol en la sangre realizada al señor

Álvarez De Jesús, -- y el foro apelativo intermedio al denegar expedir el recurso presentado ante sí --, ya que, según alega, la referida prueba se realizó válidamente mediando el consentimiento voluntario del señor Álvarez De Jesús.

**Enterado de lo anterior, el señor Álvarez De Jesús compareció ante nos mediante un _Alegato en oposición de certiorari_ y, a grandes rasgos, sostuvo que el registro efectuado a su cuerpo fue inconstitucional por no existir orden judicial a esos efectos y por el Estado no haber probado, a la luz de la totalidad de las circunstancias, que el presunto consentimiento brindado para la realización del mismo fuese uno claro, consciente, inteligente y libre de vicios. Lo anterior, entre otras razones, al no habérsele informado sobre su derecho a rehusarse a consentir al referido registro.**

Expedido el auto en reconsideración, y en lo que consideramos un errado proceder que choca frontalmente con la normativa constitucional aplicable en la jurisdicción estatal a casos como éstos, una mayoría de este Tribunal revoca las determinaciones de los foros inferiores y reafirma que, en nuestro ordenamiento jurídico, no es necesario que una persona conozca de su derecho a rehusarse a consentir a un registro y allanamiento de su cuerpo sin previa orden judicial, como requisito para la validez del referido registro. Con dicho proceder y con lo que el mismo supone, -- a saber, el achicamiento de las garantías constitucionales

que ofrece nuestra Carta de Derechos --, no podemos estar

conformes.    Por    ello,    enérgicamente    disentimos.    Nos

explicamos.

II.

A.

Como es sabido, la Constitución de los Estados Unidos de

América, en su Enmienda IV, claramente establece que,

> [n]o se violará el derecho del pueblo a la seguridad
> de sus personas, hogares, documentos y pertenencias,
> contra registros y allanamientos irrazonables, y no
> se expedirá ningún mandamiento, sino a virtud de
> causa probable, apoyado por juramento o promesa, y
> que describa en detalle el lugar que ha de ser
> allanado, y las personas o cosas que han de ser
> detenidas o incautadas. Enmda. IV, Const. EE. UU.,
> LPRA, Tomo 1.

La precitada cláusula constitucional, conocida como la

protección contra los registros y allanamientos irrazonables

por parte del Estado, protege a todas las personas contra

las intromisiones arbitrarias del Estado en sus hogares,

efectos personales, y su cuerpo. *Carpenter v. U.S.*, 585 US

296, 304 (2018); *Maryland v. King*, 569 US 435, 446 (2013);

*U.S. v. Jones*, 565 US 400, 406-407 (2012). Al interpretar la

misma, el Tribunal Supremo de los Estados Unidos ha resuelto,

en reiteradas ocasiones, que la referida garantía protege

contra toda intrusión injustificada por parte del Estado en

las zonas donde las personas albergan una expectativa

razonable a la intimidad. *Carpenter v. U.S.*, *supra*, pág. 304;

*Kyllo v. U.S.*, 533 US 27, 33 (2001); *Katz v. U.S.*, 389 US

347, 353 (1967).

Una cláusula semejante, pero mucho más abarcadora, forma parte de la Constitución del Estado Libre Asociado de Puerto Rico. Así pues, en el Art. II, Sec. 10 de nuestra Constitución, el cual forma parte de la Carta de Derechos, se establece que:

> No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.
>
> No se interceptará la comunicación telefónica.
>
> Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse. Evidencia obtenida en violación de esta sección será inadmisible en los tribunales. Art. II, Sec. 10, Const. ELA, LPRA, Tomo 1.

Sobre el alcance de la precitada cláusula constitucional, es preciso señalar que este Tribunal, al momento de adentrarse en el estudio de la misma, siempre lo ha hecho considerando el contenido de otras disposiciones constitucionales. En específico, de aquellas que, expresamente, reconocen el derecho constitucional a la intimidad y a la inviolabilidad de la dignidad del ser humano. Art. II, Secs. 1 y 8, *supra. Pueblo v. Rolón Rodríguez*, 193 DPR 166, 175 (2015); *Blassini et als. v. Depto. Rec. Naturales*, 176 DPR 454, 463-464 (2009).

Dicho ello, y ya más en lo relacionado a la disposición constitucional bajo estudio, -- entiéndase el Art. II, Sec. 10 de la Constitución del Estado Libre Asociado de Puerto Rico, *supra* --, notamos que la protección constitucional en

cuestión solo protege a nuestros ciudadanos y ciudadanas contra registros y allanamientos irrazonables. Por tanto, como regla general, los registros y allanamientos efectuados mediando una orden judicial, que cumpla con los requisitos contenidos en el texto constitucional, se presumen razonables. Esto debido a que "[l]as órdenes judiciales de registro […] constituyen una protección fundamental para el derecho a la intimidad". E. Chiesa Aponte, *Procedimiento Criminal y la Constitución: etapa investigativa*, San Juan, Ediciones SITUM, 2017, pág. 303.[6]

En cambio, cuando el Estado realiza un registro sin orden judicial previa, la actuación estatal se presume como irrazonable e inconstitucional, y, por tanto, inválida. *Pueblo v. Báez López*, 189 DPR 918, 930 (2013); *Blassini et als. v. Depto. Rec. Naturales*, *supra*, pág. 462. Véase, además, E. Chiesa Aponte, *op. cit.*, pág. 297. Cuando ello así queda demostrado, el texto claro de nuestra constitución establece que la evidencia obtenida mediante esa actuación

---

[6] La validez de la orden de registro exige el cumplimiento de cuatro requisitos constitucionales. A saber, "(1) que [la orden] sea expedida por autoridad judicial o magistrado, (2) [basada en] una declaración bajo juramento, (3) de la que surja causa probable, y (4) especificidad en la orden en cuanto […] al lugar a ser registrado y lo que se autoriza a ser incautado". E. Chiesa Aponte, *Procedimiento Criminal y la Constitución: etapa investigativa*, San Juan, Ediciones SITUM, 2017, pág. 303. Es precisamente, por la existencia de estos requisitos, que el registro realizado mediando una orden judicial se presume razonable, ya que impone un filtro a la actuación investigativa del Estado que le requiere demostrar, ante un magistrado (funcionario neutral), cierta probabilidad de éxito en su actuación intrusiva. Véase, *Pueblo v. Díaz Bonano*, 176 DPR 601, 645 (2009) (Hernández Denton, Opinión Disidente).

inconstitucional será inadmisible en los tribunales. Art. II, Sec. 10, Const. ELA, *supra*.[7]

Ahora bien, no empece a lo anterior, tanto el Tribunal Supremo de los Estados Unidos, como esta Curia, ha resuelto que existen ciertas excepciones en las que la actuación intrusiva del Estado está justificada, aun cuando se ejecuta sin orden judicial previa. Sin embargo, se tratan de "situaciones excepcionales y definidas estrechamente por la jurisprudencia". *Pueblo v. Serrano Reyes*, 176 DPR 437, 443 (2009).

A esos efectos, se han reconocido como constitucionalmente válidos los registros sin orden realizados a evidencia en campo abierto, abandonada, a plena vista o percepción; el registro para inventario; el registro por motivo de emergencia; el registro incidental a un arresto válido, y, el que se encuentra aquí en controversia, **el registro por consentimiento**. Véase, *Hester v. United States*, 265 US 57 (1924). Véanse, además, *Pueblo v. Lebrón*, 108 DPR 324 (1979); *Pueblo v. Rivera Colón*, 128 DPR 672 (1991); *Pueblo v. Dolce*, 105 DPR 422 (1976); *Pueblo v. Ortiz Martínez*, 116 DPR 139 (1985); *Pueblo v. Rodríguez Rodríguez*, 128 DPR 438 (1991); *Pueblo v. Rivera Collazo*, 122 DPR 408 (1988); *Pueblo v. Zayas Fernández*, 120 DPR 158 (1987); *Pueblo en interés del menor N.O.R.*, 136 DPR 949 (1994).

---

[7] A esos fines, la Regla 234 de Procedimiento Criminal, 34 LPRA Ap. II, provee el mecanismo adecuado para lograr la supresión de la evidencia obtenida en contravención a lo dispuesto en nuestra Constitución.

El caso de marras atañe particularmente a esta última excepción: el registro sin orden mediando el consentimiento de la persona registrada. Por ser ello así, pasemos, pues, a discutir detenidamente la misma.

B.

Sabido es que, la excepción al registro y allanamiento sin previa orden judicial mediante consentimiento parte de la premisa de que todo derecho que cobija a una persona es renunciable. Véase, *López Tristani v. Maldonado*, 168 DPR 838, 848 (2006); *Pueblo v. Medina Hernández*, 158 DPR 489, 504 (2003); *P.R. Tel. Co. V. Martínez*, 114 DPR 328, 343 (1983). Sin embargo, en ese tipo de escenarios no se debe olvidar que, cuando la renuncia implica el desistimiento de un derecho constitucional, nuestro ordenamiento jurídico ha exigido que la misma sea efectuada de manera voluntaria, consciente e inteligente. *Pueblo v. Millán Pacheco*, 182 DPR 595, 610 (2011); *Pueblo v. Medina Hernández*, *supra*, pág. 504.

**Sobre el particular, y ya más en lo relacionado a la protección constitucional contra los registros y allanamientos irrazonables por parte del Estado, es menester señalar que este Tribunal, en aquellas instancias en que ha tenido la oportunidad de expresarse sobre el asunto, ha limitado considerablemente las salvaguardas mencionadas a la hora de renunciar a dicha garantía. En consecuencia, ha acogido la teoría de la voluntariedad esgrimida por el Tribunal Supremo de los Estados Unidos, en contraposición a la teoría de la renuncia de derechos constitucionales que es**

**más garantista.**[8] W.R. La Fave, *Search and Seizure: A Treatise on the Fourth Amendment*, 6ta ed., Thomson Reuters, 2020, Vol. 4, págs. 8-11, sec. 8.1(a). Veamos.

Fue en el caso de *Schneckloth v. Bustamonte*, 412 US 218 (1973), donde el más Alto Foro Federal reconoció "que estaba claramente resuelto que 'una de las excepciones específicamente establecidas a los requerimientos de orden judicial y causa probable es el registro llevado a cabo mediante consentimiento'". E. Chiesa, *op. cit.*, pág. 419. En apretada síntesis, en el referido caso el Tribunal Supremo de los Estados Unidos estableció que a la hora del Ministerio Público tener que demostrar que un registro sin orden fue efectuado válidamente mediante el consentimiento de la persona registrada, este solo debía probar que el consentimiento al registro fue brindado voluntariamente y que no fue el resultado de algún tipo de coacción, ni expresa ni implícita. *Schneckloth v. Bustamonte*, *supra*, pág. 248.

Asimismo, en el referido caso, el más Alto Foro Judicial Federal afirmó que, en ese tipo de escenarios, la voluntariedad del consentimiento sería una cuestión de hecho a ser determinada de un análisis de la totalidad de las circunstancias. *Íd.*, págs. 248-249. Por último, en

---

[8] En síntesis, la teoría de la renuncia del derecho constitucional esboza que para que la persona cobijada por un derecho renuncie éste, debe hacerlo de forma intencional y con conocimiento del derecho renunciado, lo que implicaría a su vez, conocer que se tiene un derecho a rehusar renunciar a la protección constitucional. Por otro lado, la teoría de la voluntariedad solo persigue que la persona renuncie al derecho constitucional en cuestión de forma libre y sin coacción de ningún tipo. W.R. La Fave, *Search and Seizure: A Treatise on the Fourth Amendment*, 6ta ed., Thomson Reuters, 2020, Vol. 4, pág. 8, sec. 8.1(a).

*Schneckloth v. Bustamonte*, *supra,* el aludido foro expresó que, a la hora de examinar la voluntariedad del consentimiento prestado por la persona registrada, si bien el conocimiento que ésta tuviese sobre su derecho a rehusarse a consentir podría ser una de las circunstancias a considerarse, el Ministerio Público no venía obligado a demostrar que la persona conocía de este derecho a no consentir, como requisito para demostrar la voluntariedad del mismo. *Íd.,* pág. 249.[9]

Ahora bien, en el referido caso dos jueces del Tribunal Supremo de los Estados Unidos emitieron sendas opiniones disidentes. El primero de ellos fue el Juez Brennan, quien escribió un breve, pero elocuente, disenso. En éste, manifestó su inconformidad con la decisión de la mayoría tras sostener que no podía entender cómo un ciudadano o una ciudadana puede renunciar válidamente a una garantía constitucional tan preciada como lo es la contenida en la Cuarta Enmienda, sin conocer previamente el derecho que le cobija. *Schneckloth v. Bustamonte*, *supra*, pág. 277 (Juez Brennan, Opinión disidente).

Por otro lado, el Juez Marshall suscribió una Opinión disidente en la que igualmente mostró su inconformidad con

---

[9] En sus propias palabras, el Tribunal Supremo de los Estados Unidos dictaminó: "*We hold only that when the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent*". *Schneckloth v. Bustamonte*, 412 US 218, 248-249 (1973).

el criterio mayoritario. En síntesis, el juez disidente concluyó que, a su entender, consentir a un registro sin orden necesariamente debe implicar la toma de una decisión con conocimiento de las alternativas que la persona tiene disponible. *Schneckloth v. Bustamonte*, *supra*, págs. 284. (Juez Marshall, Opinión disidente). Por lo tanto, éste hubiese resuelto que, como mínimo, en un caso en el que se busque admitir en evidencia el fruto de un registro sin orden realizado con el alegado consentimiento de la persona, el Ministerio Público no podía descansar en la referida excepción si la persona no conocía, al momento de consentir, sobre su derecho a rehusar prestar el aludido consentimiento. *Íd.*, pág. 285. Y es que, permitir registros y allanamientos sin orden y sin la certeza de que la persona registrada conocía que, con su consentimiento, estaba renunciando a sus derechos constitucionales, es algo que el Juez Marshall entiende no está, ni puede estar, autorizado por la Constitución de los Estados Unidos de América. *Íd.*, pág. 289.[10]

**En fin, y recapitulando, con la antedicha decisión, el más Alto Foro Judicial Federal estableció la norma de la excepción por vía de consentimiento, -- anclada en, como**

---

[10] El Juez Marshall también manifestó que la Mayoría erraba al aplicar a la controversia la teoría de la voluntariedad ya que, al consentir a un registro sin orden, la persona a ser registrada no está necesariamente ante un ambiente de coacción como podría decirse lo es estar bajo custodia a la hora de realizar una confesión y abandonar la protección constitucional contra la autoincriminación. Por lo tanto, adujo que la controversia debía enfocarse no en un análisis sobre voluntariedad del consentimiento que se preocupe por el buen funcionamiento y ejecutoria de los agentes del orden público, sino en una de renuncia de derechos constitucionales. *Schneckloth v. Bustamonte*, *supra*, págs. 280-283.

**vimos, la teoría de la voluntariedad --, al requisito constitucional de orden judicial para la realización de registros y allanamientos por parte del Estado. Ahora bien, y como examinaremos a continuación, dicha norma interpretativa de la Cuarta Enmienda de la Constitución federal es el mínimo de garantía que vienen obligados a reconocer los ordenamientos jurídicos de las esferas estatales. Por ende, no existe camisa de fuerza constitucional que nos imponga adoptar, tal cual, la referida norma, máxime cuando en lo relacionado a este asunto nuestra Constitución es de factura más ancha**. Veamos.

III.

Como se sabe, en nuestra jurisdicción es norma hartamente conocida que, de ordinario, "la aplicabilidad de un derecho constitucional federal constituye solo el ámbito mínimo federal de ese derecho". *Pueblo v. Díaz Bonano*, 176 DPR 601, 621 (2009). Esta doctrina, conocida como la del "ámbito mínimo federal", plantea que tanto los estados, como Puerto Rico, gozan de la potestad de ofrecer una mayor protección o garantía constitucional bajo el texto de la Constitución local, que el reconocido bajo la Constitución federal. *Pueblo v. Díaz Bonano*, *supra*, pág. 621; *Díaz v. Colegio Nuestra Sra. Del Pilar*, 123 DPR 765, 770 (1989). Véase, además, E. Chiesa Aponte, *Los derechos de los acusados y la factura más ancha*, 65 (Núm. 1) Rev. Jur. UPR 83, 83 (1996). **Es por lo anterior que, en nuestro ordenamiento jurídico, con frecuencia se alude a cierto principio cardinal**

**de nuestro derecho puertorriqueño, a saber, aquel que postula que nuestra Constitución, -- y particularmente nuestra Carta de Derechos --, es de factura más ancha que la norteamericana por lo que "reconoce y concede unos derechos fundamentales con una visión más abarcadora y protectora que la Constitución de Estados Unidos".** *López Vives v. Policía de P.R.*, 118 DPR 219, 227 (1987).

Esta máxima ha sido de particular aplicación al analizar los contornos de la protección contra registros y allanamientos irrazonables por parte del Estado contenida en el Art. II, Sec. 10 de nuestra Constitución. Const. ELA, *supra*. Esto se ha debido a que el texto de nuestra cláusula es, de por sí, expresamente más garantista que el de la cláusula análoga comprendida en la Cuarta Enmienda federal. Const. EE. UU., *supra*.[11]

En ese sentido, al interpretar el alcance de la referida protección constitucional hemos manifestado que, si bien el texto de nuestra Constitución es análogo al comprendido en la Enmienda Cuarta de la Constitución federal, el contenido de nuestra cláusula constitucional es distinto. *Pueblo v. Yip Berríos*, 142 DPR 386, 397 (1997); *Pueblo v. Dolce*, *supra*, pág. 429. Ello se debe, principalmente, a dos razones particulares.

---

[11] Así, por ejemplo, al contener expresamente la prohibición de intercepción de comunicaciones telefónicas por parte del Estado y la regla de exclusión de evidencia obtenida en contravención de lo ahí dispuesto, nuestra protección constitucional es, sin duda, de factura más ancha. *Pueblo v. Rolón Rodríguez*, 193 DPR 166, 176 (2015). Véase, además, E. Chiesa Aponte, *Procedimiento Criminal y la Constitución: etapa investigativa*, San Juan, Ediciones SITUM, 2017, pág. 235.

En primer lugar, existe la razón histórica. A saber, que nuestra protección contra los registros y allanamientos irrazonables emana de una experiencia histórica nacional de mayores privaciones de libertades individuales y, por tanto, nuestros constituyentes vislumbraron otorgarle un mayor alcance a la misma. Véase, *Pueblo v. Dolce*, *supra*, págs. 429-431.

Por otro lado, en segundo lugar, el contenido de nuestra protección constitucional está afectado por otras disposiciones constitucionales que la amplían y ensalzan. Nos referimos en específico, a las Secciones 1 y 8 de nuestra Carta de Derechos que declaran la inviolabilidad de la dignidad del ser humano y el derecho de toda persona a la protección contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar (o sea, el derecho a la intimidad), respectivamente. Const. ELA, *supra*, Art. II, Secs. 1 y 8. Véase, además, *Pueblo v. Díaz Bonano*, *supra*, pág. 657 (Hernández Denton, Opinión disidente); *Pueblo v. Yip Berríos*, *supra*, pág. 398.[12]

Recordemos que la protección constitucional contra registros y allanamientos ilegales lo que en esencia protege es, precisamente, la intimidad de las personas contra las intrusiones arbitrarias del Estado. *Pueblo v. Miranda*

---

[12] Sobre los referidos derechos constitucionales, este Tribunal ha sostenido que éstos "son derechos constitucionales fundamentales que gozan de la más alta jerarquía y constituyen una crucial dimensión en los derechos humanos". *Arroyo v. Rattan Specialties, Inc.*, 117 DPR 35, 62 (1986). Véase, además, *P.R. Tel. Co. v. Martínez*, 114 DPR 328, 340 (1983) ("[el derecho a la intimidad] *goza de primacía en la pirámide constitucional*").

*Alvarado*, 143 DPR 356, 362 (1997); *Pueblo v. Santiago Alicea I*, 138 DPR 230, 235 (1995). Véase, además, *Katz v. US*, 389 US 347, 353 (1967).[13] Es por ello que a la hora de determinar si aplica o no la referida protección constitucional, el primer paso que venimos llamados a seguir es determinar si mediante la actuación del Estado ha ocurrido un registro en el sentido constitucional. *Pueblo v. Báez López*, *supra*, págs. 928-929; *Pueblo v. Díaz Bonano*, *supra*, pág. 613. Es decir, es preciso "determinar si se ha infringido una expectativa de intimidad que la persona alberga subjetivamente y que la sociedad está preparada para reconocer como razonable". *Pueblo v. Díaz Bonano*, *supra*, pág. 645 (Hernández Denton, Opinión Disidente).[14]

IV.

Ahora bien, no empece a la claridad de la normativa antes expuesta, -- la cual reconoce que la interpretación que realiza el Tribunal Supremo de los Estados Unidos de la

---

[13] Sobre el particular, el Juez Asociado Estrella Martínez ha expresado que, en lo que respecta a la protección constitucional contra registros y allanamientos irrazonables, la "intención de [nuestros] constituyentes fue proteger el derecho de intimidad y dignidad del ser humano". *Pueblo v. López Colón*, 200 DPR 273, 306 (2018) (Estrella Martínez, Opinión Disidente). Por lo tanto, éste concluyó que quedaba claro que la Constitución de Puerto Rico provee garantías más abarcadoras que la constitución federal en lo que respecta a la protección constitucional que aquí nos concierne. *Íd.*

[14] Sobre el particular, y en lo que aquí nos atañe, se ha resuelto por el Tribunal Supremo de los Estados Unidos que la prueba de alcohol en la sangre realizada por agentes del Estado constituye una intromisión en lo más íntimo de la persona: su cuerpo. *Missouri v. McNeely*, 569 US 141, 148 (2013). Por lo tanto, dichas pruebas son consideradas un registro para efectos de la protección constitucional que aquí nos concierne, por lo que están regidas por los requisitos y excepciones que ésta profesa. *Birchfield v. North Dakota*, 579 US 438, 455 (2016). Véase, además, *Pueblo v. Montalvo Petrovich*, 175 DPR 932, 950 (2009) (afirmando que las pruebas de aliento constituyen un registro para efectos de la protección contra registros y allanamientos irrazonables).

Cuarta Enmienda de la Constitución Federal es el mínimo de garantía que vienen obligados a reconocer los ordenamientos jurídicos de las esferas estatales --, este Tribunal, hace ya varias décadas atrás, al disponer del caso de *Pueblo en interés del menor N.O.R.,* 136 DPR 949 (1994), citó con aprobación el caso federal de *Schneckloth v. Bustamonte*, *supra*, y adoptó la norma allí establecida. Por consiguiente, desde entonces rige en Puerto Rico la excepción que valida un registro sin orden mediante el consentimiento de la persona registrada si se demuestra, meramente, que el consentimiento fue voluntario y libre de coacción.

Sobre este último aspecto, en aquella ocasión una mayoría de esta Curia sostuvo que el consentimiento que valida el registro sin orden podía ser brindado de forma explícita o implícita. *Pueblo en interés del menor N.O.R.*, *supra*, pág. 965. En lo relacionado al consentimiento implícito se señaló además que, "[u]na forma en que se entiende prestado el consentimiento implícito es aquella donde una persona obedece sin protestar al pedido de un funcionario; la persona no accede expresamente pero su acto, **en unión a un examen de la totalidad de las circunstancias**, demuestra su intención de consentir el registro". (Énfasis suplido). *Íd.*

De igual forma, y amparándose en jurisprudencia previa de este Tribunal, en *Pueblo en interés del menor N.O.R.*, *supra*, esa mayoría del Tribunal a la que hemos hecho referencia repasó los criterios que han de evaluarse a la hora de determinar si hubo o no un consentimiento expreso o

implícito. Estos criterios son (1) si medió fuerza o violencia; (2) si el registro fue practicado después de un arresto; y (3) si se encontraban otras personas presentes al momento de brindarse el consentimiento. *Íd.*, pág. 966. Véase, además, *Pueblo v. López Colón*, 200 DPR 273, 309 (2018) (Estrella Martínez, Opinión Disidente); *Pueblo v. Miranda Alvarado*, *supra*, pág. 364.

**Por último, al haber adoptado la norma de *Schneckloth v. Bustamonte*, *supra*, una mayoría de esta Curia sostuvo que "la voluntariedad de la renuncia [a la protección constitucional contra registros y allanamientos irrazonables] dependerá de la totalidad de las circunstancias".** (Énfasis suplido). *Pueblo en interés del menor N.O.R.*, *supra*, pág. 966. Al respecto, expresaron que a la hora de examinar la totalidad de las circunstancias habría de considerarse, entre otros factores: (1) la edad y la inteligencia aparente de la persona; (2) si hubo advertencia previa de los derechos constitucionales; (3) cuánto tiempo estuvo detenida la persona; (4) si hubo coacción; (5) si hubo tretas o engaños, promesas o indicación de algún tipo de vocación; (6) si había alguna deficiencia mental o cualquier otro motivo que le impida al sujeto escoger libremente entre las alternativas de consentir o no. *Íd.*, pág. 967.

Ahora bien, en el escolio 18 de la referida Opinión del Tribunal, se añadió que "[e]ntre otros factores a considerar, se pueden mencionar: si hubo ausencia de reclamo de autoridad por parte del oficial, o demostración de fuerza, o engaño

por parte de éste **o si fue un mero requerimiento de registro**". (Énfasis suplido). *Íd.*, pág. 967, esc.18.

Así pues, ante el proceder de este Tribunal en aquel momento, el entonces Juez Asociado señor Hernández Denton, emitió una sucinta, pero significativa, Opinión Disidente. En ésta, sostuvo que este Foro no debió adoptar mecánicamente la norma de *Schneckloth v. Bustamonte*, *supra*.

En ese sentido, manifestó que la "renuncia al derecho constitucional que protege a las personas contra registros y allanamientos irrazonables debe ser informada". *Pueblo en interés del menor N.O.R.*, *supra*, pág. 972 (Hernández Denton, Opinión Disidente). Señaló, además, que coincidía con la Opinión Disidente emitida por el Juez Brennan en el caso de *Schneclkoth v. Bustamonte*, *supra*, "quien concluyó que le era imposible comprender la aseveración de la mayoría acerca de que un ciudadano pueda renunciar a algo tan preciado como una garantía constitucional sin tan siquiera conocer que, sin su consentimiento, esta violación de su intimidad estaría constitucionalmente prohibida". *Pueblo en interés del menor N.O.R.*, *supra*, pág. 972 (Hernández Denton, Opinión Disidente).

**Hoy, en el contexto de considerar nuevamente la controversia constitucional que allí nos concernió, suscribimos el raciocinio del Juez Hernández Denton. Uno que, trascurridos exactamente treinta años desde su pronunciamiento, mantiene toda su vigencia.**

V.

Establecido lo anterior, conviene destacar en este escrito que la norma establecida por el Tribunal Supremo de los Estados Unidos en *Schneckloth v. Bustamonte*, *supra*, y adoptada por esta Curia en *Pueblo en interés del menor N.O.R.*, *supra*, ha sido ampliamente criticada por diversos comentaristas y estudiosos legales. W.R. La Fave, *op. cit.*, pág. 11.[15] De igual forma, varias jurisdicciones estatales de los Estados Unidos han optado por rechazar expresamente lo resuelto por el más Alto Foro Judicial Federal en el precitado caso y, amparándose en la factura más ancha de sus respectivas constituciones locales, han preferido requerir, como paso previo a una renuncia válida a la protección contra registros y allanamientos irrazonables, que la persona a ser registrada conozca de su derecho a rehusarse a consentir al registro.

Así, por ejemplo, el Tribunal Supremo del estado de Washington resolvió, en el contexto de un alegado registro a un hogar sin orden judicial, pero consentido, que la renuncia a la protección contra registros y allanamientos irrazonables debe ser el producto de una decisión informada. *State of Washington v. Ferrier*, 13 Wash.2d 103, 118 (1998).   Por

---

[15] Véase, a modo de ejemplo, Cloud, *Ignorance and Democracy*, 39 Tex. Tech. L. Rev. 1143 (2007); Gallini, *Schneckloth v. Bustamonte: History's Unspoken Fourth Amendment Anomaly*, 79 Tenn. L. Rev. 233 (2012); Lassiter, *Consent to Search by Ignorant People*, 39 Tex. Tech. L. Rev. 1171 (2007); Loewy, *Knowing "Consent" Means "Knowing Consent": the Underappreciated Wisdom of Justice Marshall's Scheckloth v. Bustamonte Dissent*, 79 Miss. L. J. 97 (2009); Maclin, *The Good and Bad News About Consent Searches in the Supreme Court*, 39 McGeorge L. Rev. 27, 48-63 (2008); Park, *Automobile Consent Searches: The Driver's Options in a Lose-Lose Situation*, 14 Rich. J.L. & Pub. Int. 461 (2011); Weaver, *The Myth of "Consent,"* 39 Tex. Tech. L. Rev. 1195 (2007).

consiguiente, el agente del orden público que intente obtener el consentimiento de una persona para registrar su hogar sin contar con una orden judicial a esos fines, deberá informar a esa persona: (1) sobre el derecho de ésta a no consentir; (2) que puede revocar el consentimiento prestado en cualquier momento; y (3) que puede limitar el alcance de su consentimiento a ciertas áreas del hogar. *Íd.*

En esa misma dirección, el Tribunal Supremo del estado de Arkansas ha concluido, bajo la factura más ancha de su constitución estatal, que se viola el derecho contra los registros y allanamientos irrazonables por parte del Estado cuando se obtiene el consentimiento de la persona registrada sin antes dejarle saber sobre el derecho de ésta a rehusarse a prestar el referido consentimiento. *State of Arkansas v. Brown*, 356 Ark. 460 (2004).

A igual conclusión han llegado los Tribunales Supremos de los estados de Mississippi y Nueva Jersey. *Graves v. State of Mississippi*, 708 So. 2d 858 (1997); *State of New Jersey v. Johnson*, 68 N.J. 349 (1975). En el caso de Nueva Jersey, el más Alto Foro Judicial de dicho estado expresamente resolvió que la excepción a los registros sin orden quedaría gobernada por la teoría de la renuncia de los derechos constitucionales. *State of New Jersey v. Johnson*, s*upra*, pág. 353.[16] De este modo, se rechazó manifiestamente la teoría de

---

[16] "We conclude that under Art. I, par. 7 of our State Constitution the validity of a consent to a search, even in a non-custodial situation, must be measured in terms of waiver; i.e., where the State seeks to justify a search on the basis of consent it has the burden of showing that the consent was voluntary, **an essential element of which is**

la voluntariedad adoptada por el Tribunal Supremo Federal en *Schneckloth v. Bustamonte*, *supra*. A nuestro juicio, a ello también estaban llamados los jueces y juezas que componen este Tribunal.

VI.

En fin, y ya para culminar esta parte de nuestro escrito, debemos reconocer que los tribunales venimos llamados a velar por el fiel cumplimiento de la doctrina del *stare decisis*. El propósito fundamental de esta doctrina "es que un tribunal, en aras de lograr certidumbre y estabilidad en las relaciones jurídicas en el país, siga sus dictámenes previos". *Aponte Rosario et al. v. Pres. CEE II*, 205 DPR 407, 492 (2020) (Colón Pérez, Opinión Disidente).

**Ahora bien, es norma conocida que la referida doctrina admite excepciones y, por consiguiente, un tribunal no vendrá llamado a seguir determinado precedente si se concluye que están presente algunas de las siguientes circunstancias: (1) el precedente establecido fue claramente erróneo, (b) los efectos de la decisión sobre el ordenamiento jurídico son adversos o (c) la cantidad de personas que confían en la decisión es limitada.** *Íd.; Arce Bucetta v. Motorola*, 173 DPR 516, 561 (2008) (Hernández Denton, Opinión de Conformidad); *González v. Merck*, 166 DPR 659, 688 (2006) (Hernández Denton,

---

**knowledge of the right to refuse consent."** (Énfasis suplido). *State of New Jersey v. Johnson*, 68 N.J. 349, 353-354 (1975).

Opinión de Conformidad). De esto último, precisamente, se trata el caso que hoy tenemos ante nuestra consideración.[17]

Es, pues, a la luz de la normativa antes expuesta que – desde la disidencia – procedemos a disponer de los asuntos que nos ocupan.

## VII.

En el presente caso el Ministerio Público acude ante nos solicitándonos la revocación de ciertas determinaciones de los foros inferiores mediante las cuales se confirmó la supresión del resultado de la prueba de alcohol en la sangre que se le realizó al señor Álvarez De Jesús. A esos fines, el Estado alega que la toma de sangre que se le realizó al susodicho acusado cae bajo la excepción de un registro sin orden mediante el consentimiento voluntario de la persona registrada.

Hoy, al acercarse a tal controversia, una mayoría de mis compañeros y compañera de estrado, -- citando lo resuelto por el Tribunal Supremo de los Estados Unidos en *Schneckloth v. Bustamonte*, *supra*; y adoptado por esta Curia en *Pueblo en interés del menor N.O.R.*, *supra* --, acceden a dicho petitorio y "clarifican" que, en Puerto Rico, no es necesario que una persona, al renunciar a su protección constitucional contra registros y allanamientos irrazonables por parte del Estado,

---

[17] En ese sentido, puede decirse que respecto a la tercera circunstancia que puede mover a este Tribunal a abandonar un precedente, "la doctrina de *stare decisis* cobra mayor vigor mientras más amplio sea el número de personas que ha confiado en el precedente. **Por el contrario, la doctrina admite más excepciones a medida que el grupo afectado por el precedente sea más limitado**". (Énfasis suplido). *González v. Merck*, 166 DPR 659, 689 (2006) (Hernández Denton, Opinión de Conformidad).

conozca, como requisito para la validez de la renuncia, que ésta tiene un derecho a rehusarse a consentir al registro sin previa orden judicial. Con dicho proceder no podemos estar conformes y, por tanto, como ya mencionamos, enérgicamente disentimos.

Y es que, de conformidad con la normativa antes expuesta, -- y similar a como han sentenciado otros juristas en el pasado --, somos de la opinión que consentir a un registro sin previa orden judicial necesariamente debe implicar la toma de una decisión con conocimiento de las alternativas que la persona tiene disponible. En nuestro ordenamiento jurídico teníamos espacio para así reconocerlo.

En ese sentido, un caso como éste, en el que se busca admitir en evidencia el fruto de un registro sin orden realizado con el alegado consentimiento de la persona, resultaba ser la ocasión perfecta para abandonar el errado precedente establecido en *Pueblo en interés del menor N.O.R.*, *supra*, y pautar de una vez y por todas que en Puerto Rico, en escenarios como el de autos, el Ministerio Público no puede descansar en la referida excepción si la persona no conoce, al momento de consentir, sobre su derecho a no prestar el aludido consentimiento. Ello, a su vez, implicaría que, a la hora de obtener el consentimiento procurado, los agentes del orden público tendrán el deber de informar a la persona a ser registrada sobre el derecho de ésta a no consentir al registro sin orden. Solo de esa forma se podría conseguir una renuncia voluntaria, inteligente e informada

de una de las protecciones constitucionales más fundamentales de las que gozan los puertorriqueños y puertorriqueñas frente al poder investigativo del Estado.

Los errores señalados no fueron cometidos. Tanto el Tribunal de Primera Instancia, como el Tribunal de Apelaciones, resolvieron correctamente la controversia que tenían ante sí.[18]

---

[18] Aún si adoptáramos como correcta la norma que hoy se "reafirma", norma que, como hemos establecido es una errada que choca frontalmente con la normativa constitucional aplicable en la jurisdicción puertorriqueña, la situación fáctica del caso de marras es patentemente distinta a la que se enfrentó el Tribunal Supremo de los Estados Unidos en *Schneckloth v. Bustamonte*, *supra*. En aquel caso, y como bien recoge la Opinión mayoritaria, los agentes del orden público que realizaron el registro sin orden preguntaron a la persona con autoridad sobre el vehículo a registrarse si podían proceder con la inspección del mismo, a lo que ésta contestó "*sure, go ahead*". *Íd.*, pág.220. Por tanto, podría decirse que en ese caso hubo un requerimiento de permiso para accionar que fue oportunamente contestado por la persona cuya pertenencia iba a ser registrada.

En el caso de autos, por otro lado, y según surge de la regrabación de la vista de supresión de evidencia, -- y tal y como se recoge en la exposición fáctica de la Opinión mayoritaria --, al señor Álvarez De Jesús, en ningún momento, se le requirió autorización para tomarle una muestra de sangre. Todo lo contrario, lo que hubo, en todo caso, fue una orden, un mandato, un reclamo por parte del Estado de que **tenía** que actuar de determinada manera y realizar determinado registro. Eso se desprende diáfanamente de lo testificado por el sargento Cruz Díaz quien, bajo juramento, admitió que le comunicó al señor Álvarez De Jesús que **tenía** que hacerle una prueba de alcohol en la sangre como parte del protocolo en investigaciones de accidentes graves. Véase, *Apéndice del certiorari*, Anejo IX, minutos 00:09:50 y 00:31:20.

Así las cosas, no tenemos duda de que el accionar del sargento Cruz Díaz en el presente caso se trató de un "mero requerimiento de registro". *Pueblo en interés del menor N.O.R.*, *supra*, pág. 968 esc. 18. Lo que, como sentenciamos en el precitado caso, es uno de los criterios a considerar a la hora de examinar la totalidad de las circunstancias mediante las cuales venimos llamados a revisar la voluntariedad del consentimiento prestado para la realización de un registro sin orden. Por tanto, aún a la luz del referido caso, abrigamos serias dudas de que el consentimiento que presuntamente prestó el señor Álvarez De Jesús haya sido, verdaderamente, voluntario. Y es que, el Ministerio Público no puede demostrar que un consentimiento fue brindado libre y voluntariamente "demostrando simplemente la aceptación [,-- de parte de la persona a ser registrada --,] de un reclamo de autoridad por parte de la Policía, especialmente cuando esta aceptación se da en circunstancias aparentemente coercitivas". *Pueblo v. Narváez Cruz*, 121 DPR 429, 451 (1988) (Hernández Denton, Opinión disidente). Tal fue la situación en el caso de marras en la cual el señor Álvarez De Jesús se encontraba bajo los efectos de la sustancia *Demerol* y recibió de parte del sargento Cruz Díaz un mandato para tomarle una muestra de sangre con fines investigativos.

VIII.

Es, pues, por los fundamentos antes expuesto que enérgicamente disentimos del curso de acción seguido por una mayoría de mis compañeros y compañera de estrado.[19]


Ángel Colón Pérez
Juez Asociado

---

[19] Por último, cabe señalar aquí que, aun cuando ninguna de las partes del presente caso ha aludido al Art. 7.09 de la Ley Núm. 22-2000, mejor conocida como la Ley de Vehículos y Tránsito de Puerto Rico, 9 LPRA sec. 5209, la Opinión mayoritaria descansa en la precitada disposición legal para concluir que el señor Álvarez De Jesús consintió válidamente a la realización de un registro sin orden en su cuerpo (en este caso, la toma de una muestra de su sangre) al transitar por las vías públicas de Puerto Rico en un vehículo de motor. A nuestro juicio, y cónsono con lo que hemos expresado a lo largo de este escrito, entendemos que el referido Art. 7.09 de la Ley de Vehículos y Tránsito de Puerto Rico, *supra*, es inconstitucional.

Y es que, según hemos explicado, no vemos cómo puede ser posible, bajo la factura más ancha que brinda nuestra constitución, que se le atribuya a una persona una renuncia consciente, inteligente e informada a tan preciada protección constitucional al acceder a ostentar el privilegio de conducir un vehículo de motor por nuestras calles. Máxime cuando conducir un automóvil en este País es prácticamente una necesidad.

Por tanto, en este respecto, compartimos el criterio esbozado por varias jurisdicciones estatales de los Estados de Unidos que, en armonía con los preceptos más garantistas que ofrecen sus constituciones estatales, han optado por rechazar legislaciones como el aludido Art. 7.09, *supra*, que implican un consentimiento implícito a la realización de pruebas para la detección de alcohol en el organismo. A esos efectos, véanse, *State v. Fierro*, 2014 S.D. 62, 853 N.W. 2d 235, 243 (Dakota del Sur) ("*our precedent is clear that the Legislature cannot enact a statute that would preempt a citizen's constitutional right, such as a citizen's Fourt Amendment right*"); *State v. Yong Shik Won*, 137 Hawai'i 330, 372 P. 3d 330 (2015) ("*in order to legitimize submission to a warrantless BAC test under the consent exception, consent may not be predetermined by statute, but rather it must be concluded that, under the totality of the circumstances, consent was in fact freely and voluntarily given*"); *Weems v. State*, 434 S.W. 3d 655 (Court of Appeals of Texas, San Antonio) (2014) ("*we hold that the implied consent and mandatory blood draw statutory scheme found in the Transportation Code are not exceptions to the warrant requirement under the Fourth Amendment*") (confirmado en *Weems v. State*, 493 S.W. 3d 574, (2016) Court of Criminal Appeals of Texas).

De hecho salta a la vista que, avalar lo estipulado en el precitado artículo de la Ley Núm. 22-2000, *supra*, tendría el efecto de echar por la borda toda nuestra jurisprudencia constitucional sobre la excepción al registro sin orden por vía del consentimiento que cita la propia Opinión mayoritaria. Al menos, en lo que respecta a los registros realizados al cuerpo de una persona como el aquí en controversia.